The Chief Justice
delivered the opinion of the court.
This case comes before us on a rule to shew cause why satisfaction should not be entered of a judgment against Herbert Hummer and John Hummer, in favor of Joseph Hankinson and John Dawes, executors of William Housel, deceased.
John Hummer, at whose instance the rule to shew cause was granted, states in the affidavit then read to us, that the real estate of Herbert Hummer, the actual debtor, the other being a surety only, was sold under an execution upon the judgment, and purchased by the plaintiffs, Hankinson and Dawes, subject to a mortgage for twelve hundred dollars to Jacob S. Demut; that he suspected this mortgage to be fraudulent, communicated his suspicions to the plaintiffs, and measures were adopted which induced an abandonment and release of the mortgage ; that the real estate was then deemed by the plaintiffs more than sufficient to satisfy the judgment; and in consideration of the real estate, relieved from the mortgage, being delivered to them, they agreed to accept of it in full discharge of the judgment, and instructed the sheriff to desist from all further proceedings under the execution.
In support of this rule, several affidavits have been taken. I have referred to the affidavit of John Hummer, for the *75 purpose of -shewing, as the case was submitted without argument, the grounds on which the application was placed. In obtaining the rule to shew cause, it was competent to be read ; farther it may not be used ; it is not evidence to sustain an entry of satisfaction.
In the other affidavits, upon a careful examination, I can find none of the alleged grounds established with such clearness and certainty as will authorize us to make absolute the rule and afford to the applicant the relief he seeks.
With respect to the instructions said to have been given to the *sheriff, he testifies that “he had no instructions from the executors relative to a release of John Hummer, upon sale of Herbert’s landsnor does he shew any instructions to desist from proceedings under the execution ; on the contrary, directions appear to have been given to him from time to time, to proceed and make sale.
Sheriff' Welsted says there were two executions in his hands, under which he advertised for sale the property of Herbert Hummer; the one in question, and an older one in favor of John Dawes, for “ something like five hundred dollars ; and upon the property was a previous mortgage to one Bishop, for about six hundred dollar’s, and Demut’s mortgage was standing on record as one of the incumbrances.” The premises were struck off by the sheriff to Joseph Hankinson, one of the plaintiffs, for a small sum, “near twenty dollars.” At some time, whether before or after this sale, does not distinctly appear, Hankinson told Herbert Hummer that if he would clear the farm of the Demut mortgage, and give them possession, he would release him from all further claim under the execution. We are not informed that this proposition was assented to or accepted -on the part of Hummer; nor that he gave them possession; although there are some vague and unsatisfactory allusions to a possession by the executors of these plaintiff-executors, in the affidavit of Josiah Cole. Did Herbert Hummer clear the farm of the Demut mortgage ? Tie did not, so far as is *76 shewn by the affidavits, take a step towards it. Sheriff Welsted says Hankinson transferred his bid for a sixteen acre lot of Herbert Hummer to Demut, for which he made a deed to Demut under the orders of Hankinson. “ My understanding at the time,” says the sheriff, “ was that Demut was to have the deed in full consideration of his mortgage on Hummer’s estate.” But how did the sheriff come to this understanding ? Did Demut tell him ? He does not say so. From Hankinson or the person who acted as his agent ? He says expressly he cannot recollect. Can we then act as if the fact were fully established, when it is not shewn that any of the parties interested ever said so, or that they “so understood it?” From some cause not explained, this first sale was not carried into effect, but abandoned. “Although Hankinson purchased, yet he never took'the deed.” Within two years or *thereabouts after the sale, the two executors died. And soon after-wards, the sheriff received directions from their executors to proceed again and make sale of the property. He did so. He sold the whole property over again, including the sixteen acre lot. Demut now became the purchaser of the whole and a deed was made to him by the sheriff. Under what circumstances this sale was made, or how much money towards the execution was raised by it, is not shewn. If we may rely on the recollection of William Kuhl, the sale to Demut was for six or seven dollars, with the incumbrances on it; a very inadequate sum to satisfy the two executions ; and yet the sheriff testifies that nothing was done to injure the sale, and that Janney Dawes appeared anxious' that the property should raise the money.
The other affidavits are alike unsatisfactory and inconclusive. Josiah Cole relates a conversation between himself and Janney Dawes, an executor of John Dawes, after the death of both the original plaintiffs, in which Janney Dawes told him they never intended to make John Hummer pay any part of the debt, and if Herbert's land did not fetch the *77 amount, they would lose it. Now it is obvious that this declaration, if entitled to any attention, could affect no person but him who made it; and moreover, so far from admitting any agreement or contract to exonerate John and rely on Herbert only, a simple intention is declared; which, however fixed it may have been, or however positively expressed, might have been revoked and dissipated by the next breath. And this witness on cross-examination said, “ I don’t know anything concerning Hankinson and Dawes releasing John Hummer from this execution ; can’t say anything concerning it. I can’t say that it is satisfied, and can’t say that it is not.”
Peter Skillman, another witness, testified “ that he heard Janncy Dawes, in his father’s lifetime, say he was doing his father’s business, and, while-conversing about the debt on the Hummer land, that Jacob S. Demut had a fictitious mortgage upon Herbert’s land, and that if Jacob would raise that, he would take Herbert’s land for the debt, or make it raise it; (which the witness could not sav), and that John Plummer should be clear of it.” Now this evidence so far from proving any agreement inchoate or consummate, shews simply an avowal, or perhaps a *boast, of what would or could be done by him-who made it, in discourse with the witness, who had no concern in the affair, and extends no participation or knowledge to either Hankinson or John Dawes. I pass by, as wiiolly incompetent, what Skillman afterwards states, on tho authority of Demut, “ as Demut tells me.”
The value of the land is sought to be established by several of the affidavits, for the purpose, it may be presumed, of shewing that it was sufficient to satisfy the execution in question. No witness rates it higher than twenty dollars by the acre. Taking the quantity included in the sale as seventy acres, according to the affidavit of John TI. Hummer, (and such, may be a correct estimate laying aside the sixteen acre lot, which, it is said, went to satisfy Demut’s mortgage, and the *78 sixty-tliree acres which Cole speaks of as the school lands, and which he says “had nothing to do with the judgment,” and did not go to “ satisfy any part of the execution,”) we find a result of fourteen hundred dollars, from which, deducting the mortgage of Bishop, and the execution of John Dawes, with the ordinary allowance for costs, and very little of the value o'f the lands would remain towards the execution in question, if the lands had been obtained by the executors; but the lands were conveyed by the sheriff to Demut, and the amount of -sales, which the sheriff does not state, was, according to Kulil, as already mentioned, very inconsiderable. How then has satisfaction been made ?
Upon the whole, these affidavits are just sufficient to throw a dubious light over the transaction ; to make one solicitous to penetrate the “ palpable obscure,” in order to ascertain whether the proceeding on the part of the sheriff, which has been stayed by the present inquiry, may do injustice to John Hummer; but they are by no means sufficient to authorize us' now to interfere farther in his behalf. I feel bound to declare his present application unsustained ; and still, there is enough in it to induce me not to regret that if he can make a better case, he may yet obtain redress in the Court of Chancery, or perhaps in this court.
Ford, J. and Drake, J. concurred.